UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FIFTH THIRD BANK, N.A.,

     Plaintiff,

                                     Case No. 1:25-cv-1350

v.

                                     Hon. Hala Y. Jarbou

WHITNEY HOLDINGS, LLC, and
TIMOTHY WHITNEY,

     Defendants.

_____/

## **OPINION**

Defendant Whitney Holdings, LLC, failed to pay Plaintiff Fifth Third Bank, N.A., the amount owed under a promissory note secured by cargo vans owned by Whitney Holdings and by a guaranty signed by Defendant Timothy Whitney, who also failed to pay. Fifth Third now moves for summary judgment for breaches of the note and the guaranty. It also moves for declaratory judgment regarding its right to foreclose on the collateral in the security agreement. For the reasons below, the Court will grant in part Fifth Third's motion and order further briefing regarding its request for attorney's fees and costs.

## **I. BACKGROUND**

Under a promissory note signed on August 26, 2024, Whitney Holdings received an automatically renewing line of credit from Fifth Third for up to $965,000. (*See* Promissory Note, ECF No. 22-1.) Whitney Holdings borrowed that amount and agreed to make monthly payments of accrued interest and then to pay all of the outstanding principal and accrued unpaid interest on August 26, 2025. (*Id.* at 1.) That deadline would automatically extend every year unless Fifth

Third sent notice beforehand that it would not be extended.  (*Id.*)  If Whitney Holdings failed to make any payment when due, then it would be in default.  (*Id.* at 2.)

On July 22, 2025, Fifth Third sent a notice declining to extend the payment deadline.  The notice explained that the note was "due and payable in full on August 26, 2025."  (Notice, ECF No. 1-4.)  That deadline came and went, and Whitney Holdings failed to pay the outstanding balance.  (Cruz Aff. ¶ 8, ECF No. 22.)

Whitney Holdings' default had several consequences.  First, Timothy Whitney became liable to pay Whitney Holdings' outstanding debt as part of the guaranty he signed.  (*See* Commercial Guaranty, ECF No. 22-4.)  Second, Fifth Third could exercise its rights in the three cargo vans set forth in the security agreement.  (*See* Security Agreement, ECF No. 22-5.)  Third, both Whitney and Whitney Holdings became liable to pay Fifth Third's costs and attorney fees for enforcing any of the loan documents.  (*See* Promissory Note 2; Commercial Guaranty 3; Security Agreement 4.)

On November 3, 2025, Fifth Third sued Whitney Holdings for breach of the promissory note and Whitney for breach of the guaranty, requesting payment as described under the agreements.  (Compl. ¶¶ 18–25.)  Fifth Third also claimed it was entitled to declaratory judgment regarding its right to foreclose on the cargo vans.  (*Id.* ¶¶ 26–29.)  On December 23, 2025, Whitney and Whitney Holdings filed an answer, raising eleven affirmative defenses.  (Answer, ECF No. 13.)  Fifth Third filed a motion for summary judgment on April 17, 2026 (ECF No. 22).  Defendants failed to file a response, and the time for doing so has passed.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the movant would not bear the burden of persuading the finder of fact of its claim or

defense at trial, the necessary showing can be made by submitting "affirmative evidence that negates an essential element of the nonmoving party's claim," *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting), or by "pointing out" that there is no evidence supporting such an element, *id.* at 325 (majority opinion).  The onus is then on the nonmovant to come forward with "'sufficient evidence from which a jury could reasonably find' in its favor."  *Davis v. Sig Sauer, Inc.*, 126 F.4th 1213, 1230 (6th Cir. 2025) (quoting *Troutman v. Louisville Metro. Dep't of Corr.*, 979 F.3d 472, 481 (6th Cir. 2020)).  All inferences from disputed facts must be resolved in the nonmovant's favor.  *Doe v. Univ. of Ky.*, 111 F.4th 705, 715 (6th Cir. 2024).

Failing to respond to a summary judgment motion does not amount to default.  "A party is never required to respond to a motion for summary judgment in order to prevail since the burden of establishing the nonexistence of a material factual dispute always rests with the movant."  *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014) (quoting *Smith v. Hudson*, 600 F.2d 60, 64 (6th Cir. 1979)).  "Even where a party 'offer[s] no timely response to [a] motion for summary judgment, the District Court [may] not use that as a reason for granting summary judgment without first examining all the materials properly before it under Rule 56(c).'"  *Id.* (quoting *Smith*, 600 F.2d at 65).

In deciding an unopposed motion for summary judgment, courts may only consider the "facts presented and designated by the moving party."  *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992).  "[A] district court is not required to search the record to determine whether genuine issues of material fact exist" for an unopposed summary judgment motion.  *Willis v. Valley Residential Servs.*, No. 06-13686-BC, 2008 WL 1820892, at *3 (E.D. Mich. Apr. 22, 2008) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989)).  It is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to

3

champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the [unopposed] motion." *Guarino*, 980 F.2d at 406.

### III. ANALYSIS

Michigan law governs Fifth Third's claims.  The promissory note, the guaranty, and the security agreement contain identical choice-of-law provisions selecting Michigan law.  (*See* Promissory Note 2 ("This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Michigan without regard to its conflicts of law provisions."); Commercial Guaranty 3 (same language); Security Agreement 5 (same language).)   "Michigan's public policy favors the enforcement of contractual forum-selection clauses and choice-of-law provisions." *Robert A. Hansen Family Tr. v. FGH Indus., LLC*, 760 N.W.2d 526, 532 (Mich. Ct. App. 2008).  Neither party has contested the applicability of Michigan law to this litigation, so the Court will apply it here.

As a threshold matter, the Court need not examine Defendants' affirmative defenses because they have not presented any evidence to support them.  *See Celotex*, 477 U.S. at 325 (noting that Rule 56 does not "allow[] a party opposing summary judgment to resist a properly made motion by reference only to its pleadings"); *see also Savas v. William Beaumont Hosp.*, 102 F. App'x 447, 450 (6th Cir. 2002) ("Merely alleging something in the complaint is not enough to create a jury issue in the face of a motion for summary judgment.").

### A. Breach of Promissory Note

Fifth Third has shown that it is entitled to summary judgment with respect to its claim that Whitney Holdings breached the promissory note.  Under Michigan law, a breach-of-contract claim has three elements: (1) the existence of a contract, (2) a breach of that contract, and (3) damages suffered as a result of the breach.  *Miller-Davis Co. v. Ahrens Constr., Inc.*, 848 N.W.2d 95, 104

(Mich. 2014).  At the outset, there is no genuine dispute of fact as to the existence and contents of the promissory note, which is attached to Fifth Third's motion.

There is also no genuine dispute that Whitney Holdings breached the promissory note.  The primary goal of contractual interpretation under Michigan law "is to give effect to the parties' intentions at the time they entered into the contract*." Bank of Am., NA v. First Am. Title Ins. Co.*, 878 N.W.2d 816, 821 (Mich. 2016).  Michigan courts must "determine the parties' intent by interpreting the language of the contract according to its plain and ordinary meaning." *Id.*  "If the language of a contract is unambiguous, [courts] must enforce the contract as written." *Id.*

The relevant language of the promissory note is unambiguous.  It required payment "of all outstanding principal plus all accrued unpaid interest on August 26, 2025." (Promissory Note 1.) That deadline would automatically extend for a year "unless [Fifth Third] [gave] notice[] at least 30 days prior" to the deadline.  (*Id.*)  Fifth Third gave such notice in a letter from Assistant Vice President Stephenie Dunn to Whitney Holdings dated July 22, 2025.  (7/22/2025 Letter, ECF No. 1-4 ("After careful review of your account we have determined that we will be unable to extend the maturity date of this note . . . . Consequently, the note will be due and payable in full on August 26, 2025.").)  And there is evidence that Whitney Holdings did not pay the amount owed under the note.  Fifth Third's Vice President, Sylvia Cruz, states in a declaration that Whitney Holdings "fail[ed] to remit payment of all outstanding principal plus all accrued interest on August 25, 2025."  (Cruz Decl. ¶ 8, ECF No. 22, PageID.116.)

Finally, the fact that Fifth Third suffered damages is apparent from the breach itself.  As of February 13, 2026, Whitney Holdings owed Fifth Third $961,916.41 for unpaid principal and $55,614.14 of accrued interest.  (*Id.* ¶ 11.)  Interest continues to accrue at a daily amount of $317.16.  (*Id.*)  Thus, there is no genuine dispute of material fact with respect to damages.

Accordingly, Fifth Third is entitled to summary judgment on its claim for breach of the promissory note.

### B. Breach of Guaranty

Fifth Third also claims that Whitney breached the terms of the guaranty that he signed. Michigan law "presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its contents." *McKinstry v. Valley Obstetrics-Gynecology Clinic, P.C.*, 405 N.W.2d 88, 96 (Mich. 1987).  While the "assumption of another's debt is a substantial undertaking, and thus the courts will not assume such an obligation in the absence of a clearly expressed intention to do so," *Bandit Indus., Inc. v. Hobbs Int'l, Inc.*, 620 N.W.2d 531, 535 (Mich. 2001), "[c]ontracts of guaranty are to be construed like other contracts, and the intent of the parties as collected from the whole instrument and the subject-matter to which it applies is to govern," *First Nat'l Bank v. Redford Chevrolet Co.*, 258 N.W. 221, 223 (Mich. 1935) (quotation marks and citation omitted).

The terms of the guaranty here are broad, committing Whitney to "absolutely and unconditionally guarantee[] full and punctual payment and satisfaction" of "all of the principal amount outstanding [plus] accrued unpaid interest thereon" of the debt owed by Whitney Holdings to Fifth Third, including any debt "now existing or hereafter arising or acquired." (Commercial Guaranty 1.)  So Whitney, like Whitney Holdings, had an obligation to pay Fifth Third for the debt due under the promissory note.  And like Whitney Holdings, Whitney also "fail[ed] to satisfy the Promissory Note following Whitney Holdings's default and Fifth Third's demand for payment thereunder." (Cruz Aff. ¶ 15.)  As with breach of the promissory note, Fifth Third has suffered damages as a result of breach of the guaranty.  Accordingly, there is no genuine dispute of material fact with respect to Fifth Third's claim for breach of the commercial guaranty.  The Court will therefore grant summary judgment in Fifth Third's favor for this claim.

6

### C. Enforcement of Security Agreement

Fifth Third seeks declaratory relief regarding its rights under the security agreement. Specifically, it seeks a declaration that it is entitled to foreclose on, and take possession and control of, the collateral specified in the security agreement. (Compl. ¶¶ 28–29.) The Michigan Uniform Commercial Code governs any transaction that "creates a security interest in personal property or fixtures by contract." Mich. Comp. Laws § 440.9109(1)(a). Under the Code, "[a] security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral." *Id.* § 440.9203(1). A security interest is enforceable against the debtor when: (1) value has been given; (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and (3) the debtor has signed a security agreement that provides a description of the collateral. *Id.* § 440.9203(2).

The evidence supports all of these elements. The security agreement is signed by Whitney Holdings. (*See* Security Agreement 6.) The agreement describes the collateral as consisting of three cargo vans, which are identified according to their make, model, year, and vehicle identification number. (*Id.* at 1.) In the agreement, Whitney Holdings represented that it holds good and marketable title to each van. (*Id.* at 2.) It expressly granted Fifth Third a security interest in this collateral to secure its debt to Fifth Third. (*Id.* at 1.) There is no genuine dispute that Fifth Third loaned the money under the promissory note to Whitney Holdings in consideration for the security agreement, and that Whitney Holdings defaulted on that note. The security agreement provides that, in the event of default, Fifth Third could take possession of the collateral and sell, lease, or transfer it. (*Id.* at 4.) Likewise, after a default, Michigan law permits a secured party to take possession of collateral and sell it. Mich. Comp. Laws §§ 440.9609(1), 440.9610(1). Consequently, Fifth Third is entitled to declaratory judgment with respect to its rights under the

security agreement.  Specifically, Fifth Third is entitled to foreclose on the collateral in the security agreement and to take possession of it.

### D. Attorney's Fees and Costs

Fifth Third argues that Whitney Holdings and Whitney are jointly and severally liable for its attorney's fees and litigation costs under the promissory note and the commercial guaranty. "The parties to a contract may include a provision that the breaching party will be required to pay the other side's attorney fees and such provisions are judicially enforceable."  *Zeeland Farm Servs., Inc. v. JBL Enters., Inc.*, 555 N.W.2d 733, 736 (Mich. Ct. App. 1996).  However, a party's recovery under such a provision is "limited to *reasonable* attorney fees."  *Id.* (emphasis added). The factors a court applying Michigan law considers when examining the reasonableness of attorney's fees include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

*Id.* at 737 n.3; *see Adv. Accessory Sys., LLC v. Gibbs*, 71 F. App'x 454, 464 (6th Cir. 2003) (citing the factors in *Zeeland*).

Fifth Third is correct that the promissory note and guaranty entitle it to attorney's fees and costs.  (*See* Promissory Note 2 ("Lender may hire or pay someone else to help collect this Note if

8

Borrower does not pay.  Borrower will pay Lender that amount.  This includes Lender's reasonable fees and . . . legal expenses."); Commercial Guaranty 3 ("Guarantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and . . . legal expenses, incurred in connection with the enforcement of this Guaranty."); *see also* Security Agreement 4 ("Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement.").)  However, Fifth Third fails to establish that its claimed fees and costs are reasonable.  The only evidence it provides is a declaration from its attorney stating the total amount of fees charged and costs incurred.  (Boyd Decl. ¶¶ 8–9, ECF No. 22.)  Although the attorney asserts that these fees and costs are reasonable and customary, he does not provide the Court with sufficient information to make that assessment.  For instance, he does not identify the specific costs incurred, the number of hours expended, the tasks performed, the rate charged for his services, or his experience with this type of litigation.  That said, the Court acknowledges Fifth Third's entitlement to fees and costs and will grant it an opportunity to provide further briefing on whether those fees and costs are reasonable.

## IV. CONCLUSION

For the reasons discussed, the Court will grant Fifth Third's motion for summary judgment in part.  The Court will grant the motion with respect to Fifth Third's claims that Whitney Holdings is liable for breaching the promissory note, and that Timothy Whitney is liable for breaching the commercial guaranty.  Because interest on the debt continues to accrue, and because Fifth Third has calculated its damages for non-payment as of February 13, 2026, the Court will require Fifth Third to provide an updated calculation of damages.  In addition, Fifth Third is entitled to a declaratory judgment that it can foreclose on the collateral in the security agreement.  However, the Court will deny the motion for summary judgment insofar as Fifth Third argues it is entitled to

the full amount of attorney's fees and costs claimed.  Fifth Third is entitled to recovery of attorney's fees and costs, but the Court will require Fifth Third to provide additional information supporting the reasonableness of the claimed fees and costs.

An order and judgment will enter in accordance with this Opinion.


Dated: July 6, 2026                                      /s/ Hala Y. Jarbou
                                                         HALA Y. JARBOU
                                                         CHIEF UNITED STATES DISTRICT JUDGE